# IN THE COURT OF APPEALS OF IOWA

No. 16-1963
Filed February 22, 2017

**IN THE INTEREST OF T.O.,**
**Minor Child,**

**S.S., Father,**
        Appellant.

_____

Appeal from the Iowa District Court for Appanoose County, William S. Owens, Associate Juvenile Judge.

A biological father appeals the order terminating his parental rights to his one-year-old son. **AFFIRMED.**

Monte M. McCoy of McCoy Legal Services, Centerville, for appellant father.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd (until withdrawal) and Mary A. Triick, Assistant Attorneys General, for appellee State.

Julie DeVries of DeVries Law Office, P.L.C., Centerville, guardian ad litem for minor child.

Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

At the center of this termination-of-parental-rights appeal is T.O., a child with special needs who turns two years old in March 2017. His biological father, Steven, appeals the juvenile court order severing the parent-child relationship.[1] The court cited Steven's substance abuse and mental health as concerns in the termination order. On appeal, Steven argues the record lacks sufficient evidence T.O. "could not be returned to the father's care and custody within a reasonable period of time following the termination hearing." Steven also contends termination was not in the child's best interests.

After our independent review,[2] we agree with the juvenile court's conclusion that the State offered clear and convincing evidence T.O. could not be returned to Steven's care "at the present time" under the terms of Iowa Code section 232.116(1)(h) (2016) and termination was in the child's best interests, as measured by the criteria in section 232.116(2). Accordingly, we affirm.

At his birth in March 2015, T.O. tested positive for marijuana. In May 2015, his mother, Katie—who had a history of mental-health issues and substance abuse—voluntarily placed T.O. with family friends. These caregivers noticed concerning physical symptoms, including muscle stiffness and possible seizures, which medical professionals believed could be linked to T.O.'s drug-

---

[1] The order also terminated the parental rights of T.O.'s mother, Katie, and legal father, Richard. They are not parties to this appeal.

[2] We review child-welfare cases de novo. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). Although we are not bound by the fact-findings of the juvenile court, we give them weight, particularly as to witness credibility. *See id.* Proof of the grounds for termination must be clear and convincing. *Id.* Evidence is "clear and convincing when there are no 'serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence.'" *Id.* (alteration in original) (quoting *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)).

affected birth. T.O. began receiving Early ACCESS services from the Area Education Agency.[3] In July 2015, the court adjudicated T.O. as a child in need of assistance (CINA) and confirmed his out-of-home placement, where T.O. remained for the duration of the CINA case.

At the time of T.O.'s birth, Katie was married to Richard but living with paramour Steven. Katie reported Steven could be T.O.'s father. In August, the Iowa Department of Human Services (DHS) noted Steven believed he was the baby's father. In September 2015, Richard was ruled out as T.O.'s biological father. Steven took a paternity test in February 2016 and, on March 2, 2016, received results showing a 99.9% probability he was T.O.'s father.

Even before the paternity test, Steven had been participating in DHS services. He was in substance-abuse treatment for a short time in 2015 but left because he wanted a new evaluation. In May 2016, Steven submitted to a random drug test. He told the provider the test would be clean, but it returned positive for marijuana and PCP (phencyclidine). At a substance-abuse assessment after the positive test, Steven admitted he had been using marijuana and methamphetamine. He participated in a residential treatment program for twelve days in August 2016. His counselor reported Steven was "adamant" about discharging, and she graded his prognosis for staying clean as "guarded"

---

[3] Early ACCESS is Iowa's early intervention system funded through Part C of the Federal Individuals with Disabilities Education Act (IDEA). *See What Is Early ACCESS?*, Iowa Family Support Network, http://www.iafamilysupportnetwork.org/early-access-iowa/what-is-ea/what-is-early-access (last updated Sept. 30, 2016). The Act aims to lower the likelihood of delays in development and improve outcomes of children before they enter school. *See id.*

based on her opinion that he rushed through treatment, not taking time to work through his issues.

In July 2016, the State filed a petition for termination of parental rights. While the petition was pending, Steven was arrested for public intoxication and entered a guilty plea. The juvenile court held a termination hearing in September 2016. The case worker testified Steven was fairly consistent with his weekly supervised visits with T.O. and the two appeared to be forming a bond. Steven testified he suffered from severe depression and anxiety, acknowledging when he did not take his prescribed medication, he had used controlled substances to "numb it." Steven introduced a report purporting to be from his current outpatient provider, but the report did not provide "much insight" to the juvenile court as to Steven's progress.

On November 2, 2016, the juvenile court issued its order terminating Steven's parental rights under section 232.116(1)(h).[4] The court decided it was "clear based on the evidence presented" that Steven had not "corrected or addressed the issues that gave rise to the adjudication" and that T.O. could not be placed with him "at this time and be protected from the type of harm" that caused T.O. to be adjudicated CINA. The court also found termination to be in T.O.'s best interests. Steven appeals those findings.

---

[4] Under this provision, the court may terminate the rights of a parent to a child if: (1) the child is three years old or younger, (2) the child has been adjudicated a CINA under section 232.96, (3) the child has been out of the parent's custody for at least six of the last twelve months or the last six consecutive months and any trial period in the home has been under thirty days, and (4) "[t]here is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time." Iowa Code § 232.116(1)(h). "At the present time" refers to the point of the termination hearing. *See In re A.M.,* 843 N.W.2d 100, 111 (Iowa 2014).

Steven disputes the juvenile court's conclusion he was not in a position to care for T.O. at the time of the hearing. Steven notes he had "successfully discharged" from a residential treatment program and engaged in outpatient treatment. He extols his efforts to obtain counseling, manage his medication, secure stable housing and employment, as well as attend visitation with T.O. Finally, Steven claims he was "not afforded a reasonable opportunity to establish himself as an appropriate caregiver for his child" because paternity testing was not complete until eight months after the CINA adjudication.

The juvenile court addressed the timing of the paternity test. The court found it significant that Steven was living with Katie when the DHS became involved, acknowledged he was likely T.O.'s father, and engaged in services before the paternity testing. *See In re J.S.*, No. 14-1077, 2014 WL 4635529, at *5 (Iowa Ct. App. Sept. 17, 2014) (giving some consideration to time before paternity was established because father cannot ignore intimate relationship with mother, knowledge of her pregnancy, and child's birth). The court concluded it was "quite clear Steven has had ample services to work toward reunification." The court further noted even if it only considered Steven's progress since paternity was established, he still had six months to remedy his parenting deficiencies, without sufficient improvement.

We recognize Steven has taken positive steps in addressing his mental-health and substance-abuse problems. But his approach was too hurried and superficial to instill confidence in his ability to assume the responsibility of parenting T.O. full time. We share the juvenile court's conclusion that at the time of the termination hearing, the risk of harm to T.O. was too high to order

reunification with Steven. We also find it persuasive that T.O.'s guardian ad litem did not believe T.O. could be safely placed in Steven's care. *See A.M.*, 843 N.W.2d at 112.

We next turn to Steven's best-interests argument. According to Steven, termination is not in T.O.'s best interests because Steven has "been consistent with visits, the visits have gone well, and he was actively engaged services." These assertions are more about the father than the son.

Our determination of best interests must track Iowa Code section 232.116(2). *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (rejecting court's use of an unstructured best-interests test). That provision focuses our attention on the child's safety; the best placement for furthering his long-term nurturing and growth; and his physical, mental, and emotional condition and needs. *See* Iowa Code § 232.116(2). T.O. may face some developmental challenges, but according to the record, he has been receiving quality care in his current placement and would be a good candidate for adoption. By the time of the termination hearing, T.O. had been away from his biological parents for more than one year, virtually since he was born. We conclude the child's safety and his physical and emotional needs will be best served by terminating Steven's parental rights and allowing T.O. to move toward a permanent home.

**AFFIRMED.**